## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

MARCUS L. CARGLE,                        )
                        Petitioner,      )
v.                                       )         Case No. CIV-07-659-D
                                         )
MARTY SIRMONS, WARDEN,                   )
                                         )
                        Respondent.   )

## REPORT AND RECOMMENDATION

Petitioner, Marcus L. Cargle, appearing *pro se*, has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his state court conviction on various federal constitutional grounds.  It is recommended that his petition be denied.

### I.   Case History

Petitioner was convicted in the District Court of Oklahoma County, State of Oklahoma, Case No. CF-1993-6982, of two counts of First Degree Murder (Counts I and II) and Possession of a Firearm After Former Conviction of a Felony (Count III).  Petitioner was sentenced to death on the First Degree Murder convictions and received a ten-year sentence on Count III.

 Petitioner appealed his convictions as to Counts I and II to the Oklahoma Court of Criminal Appeals (OCCA).  The OCCA affirmed the convictions.  *See Cargle v. State*, 909 P.2d 806 (Okla. Crim. App. 1995).  The OCCA later denied Petitioner's requests for post-conviction relief and an evidentiary hearing.  *See Cargle v. State*, 947 P.2d 584 (Okla. Crim. App. 1997).

Petitioner then sought federal habeas corpus relief which the district court granted, and the Tenth Circuit Court of Appeals affirmed. *See Cargle v. Mullin*, 317 F.3d 1196 (10th Cir. 2003). The case was remanded to the state courts for a new trial. Upon remand, Petitioner was retried on all three counts, but the district court declared a mistrial. *See* Response, Exhibit 3, OCCA Opinion at 2 (reciting procedural history).

Petitioner's third trial resulted in a conviction of the lesser included offense of accessory after the fact as to Count I (the death of Richard Paisley), but Petitioner was convicted of First Degree Murder as to Count II (the death of Sharon Paisley). He was also convicted of Count III. Petitioner was sentenced to 40 years imprisonment on Count I, life imprisonment without the possibility of parole on Count II, and 10 years imprisonment on Count III, with the sentences to run consecutively.

The OCCA affirmed Petitioner's convictions by Opinion filed May 4, 2007. *See* Response, Exhibit 3, OCCA Opinion.

## II.   Factual Background

The facts of the case, as stated in the OCCA's opinion, are as follows:

> On September 24, 1993, Appellant and co-defendant Christopher Todd Williams purchased marijuana from the victim, Richard Paisley. The marijuana was low grade "home grown" or "ditch weed," which was apparently unacceptable to Appellant. Appellant went to his uncle's house, where he was met by Williams and mutual friend Christopher Todd Jackson. The three men then traveled to Paisley's house to retrieve the money paid for the marijuana.
> When the trio arrived, Mr. Paisley greeted them at the door. Paisley, Jackson, and Appellant smoked marijuana on the front porch; afterward, all four men entered Paisley's house to discuss the marijuana sold earlier. Mr. Paisley said he didn't want any trouble and that he would return the money.

2

Paisley then left his house to visit the neighbors, leaving his wife alone with the three men. Paisley borrowed money from the neighbor to repay Appellant, and was gone about fifteen minutes. During that time, Mrs. Paisley shared a drink and some popcorn with the trio.

After Mr. Paisley returned, he gave Appellant $200 and sat down on the couch next to his wife. The three men stood up to leave, but Williams said he had to use the bathroom and went into the back of the house. When Williams returned, he shot Mr. Paisley in the chest with a Tech 9 pistol. Mr. Paisley jumped up and Williams then shot him in the back of the head. Mrs. Paisley dropped to the floor between the couch and the coffee table.

Although different versions of what happened next were told at trial, some trial testimony indicated that Appellant then moved toward the coffee table and shot Mrs. Paisley in the back of the head with a .22 caliber pistol. The pistol apparently jammed, but Appellant cleared the jam and eventually shot Mrs. Paisley a second time as she lay on the floor. Williams also shot Mr. Paisley a second time in the head. After the shootings took place, the three men wiped the house down to remove fingerprints. Williams also stole the Paisleys' TV and VCR.

*See* Response, Exhibit 3, OCCA Opinion at 2-3. The OCCA's findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III.   <u>Grounds for Habeas Corpus Relief</u>

Petitioner brings the following three grounds for federal habeas corpus relief: (1) Petitioner was denied the right of confrontation in violation of his Sixth and Fourteenth Amendment rights; (2) Petitioner's due process right to a fundamentally fair trial was violated due to the trial court's failure to instruct the jury that the testimony of an accomplice must be independently corroborated; and (3) the evidence was insufficient to support Petitioner's conviction because the accomplice testimony was not independently corroborated. Petitioner raised all three grounds for relief on direct appeal to the OCCA and

the OCCA denied each of these claims on the merits.  Petitioner also raised additional claims

on direct appeal that he does not assert in this federal habeas action.[1]

## IV.   Standard of Review

The standard of review established under the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA) applies to the grounds for relief raised by Petitioner and

adjudicated on the merits by the state courts. *See Turrentine v. Mullin*, 390 F.3d 1181, 1188

(10th Cir. 2004); *Smallwood v. Gibson*, 191 F.3d 1257, 1264 (10th Cir.1999).  Under

AEDPA, this Court may grant Petitioner habeas relief only if the state court adjudication

"resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States."

28 U.S.C. § 2254(d)(1).

In applying the deferential AEDPA standard, the court first determines whether the

principle of federal law on which the petitioner's claim is based was clearly established by

the Supreme Court at the time of the state court judgment. *Turrentine*, 390 F.3d at 1189.  If

so, the court considers whether the state court decision was contrary to or an unreasonable

application of that clearly established federal law.  *Id.*  A decision is "contrary to" clearly

established federal law for purposes of § 2254 if "the state court applies a rule that

---

[1]In his Reply [Doc. #13], Petitioner states that he intended to bring as grounds for relief all nine propositions of error he raised on direct appeal.  The Petition, however, raised only three grounds for relief and the State properly addressed those grounds in its Response.  Petitioner has subsequently twice filed motions for leave to amend [Doc. ## 15, 17] but those motions have been stricken for procedural irregularities.  *See* Orders [Doc. ## 16, 18].

4

contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different" and "mutually opposed" to the Supreme Court decision itself. *Id*. at 406. A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

In conducting this inquiry, the factual findings of the state trial and appellate courts are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Short v. Sirmons*, 472 F.3d 1177, 1184 (10th Cir. 2006) (*citing* 28 U.S.C. § 2254(e)(1)).

Even if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, the analysis is not complete. Unless the error is a structural defect in the trial that defies harmless-error analysis, the court must apply the harmless-error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and *O'Neal v. McAninch*, 513 U.S. 432 (1995). *Turrentine*, 390 F.3d at 1189.

5

V.    **Analysis**

A.    **Ground One – Right to Confrontation**

The Sixth Amendment of the United States Constitution guarantees an individual accused of a criminal offense the right "to be confronted with the witnesses against him." U.S. Const. amend. VI.  Under clearly established federal law as determined by the United States Supreme Court, the Confrontation Clause bars the admission of testimonial statements of a declarant who does not appear at trial unless the declarant is shown to be unavailable and the accused had an earlier opportunity to cross-examine the declarant.  *See Crawford v. Washington*, 541 U.S. 36, 53-60 (2004).[2]

At Petitioner's trial, the testimony of witness Luke Jones was read to the jury.  Jones had previously testified at Petitioner's first trial and also at Petitioner's second trial, which was declared a mistrial.  As the OCCA explained, at Petitioner's third trial, "Jones refused to testify on the basis that the State had not fulfilled certain promises to him, promises that had motivated his decision to contact the police originally and then testify against [Petitioner]."  *See* OCCA Opinion at 4.

---

[2]Petitioner's claim indisputably involves the admission of prior "testimonial" statements -- the sworn testimony of a witness, Luke Jones, given at Petitioner's second trial.  Jones testified that Petitioner told him of the murders and admitted that he shot the female victim twice in the head.  As the Supreme Court stated in *Crawford*, "[w]hatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, *or at a former trial*; and to police interrogations."  *Crawford*, 541 U.S. at 68 (emphasis added).

Upon learning that Jones refused to testify, the State moved to declare him unavailable and to present his testimony from the transcript of the 2004 mistrial.[3] Over defense counsel's objection, and after questioning Jones about his refusal to testify, the trial judge declared Jones unavailable and allowed the trial testimony to be read to the jury. Tr. Vol. V at 646-647; *see also* Tr. Vol. VI at 949.

Under Oklahoma law, a witness is unavailable if the witness "[p]ersists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so." Okla. Stat. tit. 12, § 2804(2).[4] Here, the trial judge did not expressly order Mr. Jones to testify. Nonetheless, the trial judge conducted an *in camera* hearing on the issue of Mr. Jones' unavailability. *See* Tr. Vol. V at 639-649. Initially, Jones stated he would not testify because he was "taking the fifth," referring to his Fifth Amendment right against self-incrimination. *See id.* at 640-643. The trial judge explained to Mr. Jones: "Unless you're looking at some kind of criminal charge you don't have a fifth amendment right. Do you understand that?" *Id.* at 643. Mr. Jones responded affirmatively. The trial judge then explained to Mr. Jones: "And if you don't testify because you're merely refusing to, you can be held in contempt." *Id.* Mr. Jones understood that as well, but expressed his continued

---

[3]The record is silent as to the reason for the mistrial. There is no indication, however, that Jones' testimony played any part in the trial court's decision to declare a mistrial.

[4]On habeas review the court "need not address whether hearsay evidence was properly admitted under the [Oklahoma Evidence Code] or whether admission would have been proper under the Federal Rules of Evidence; rather [the court's] inquiry is whether the admission of hearsay evidence deprived [the defendant] of his rights under the Sixth Amendment right to confront and cross-examine the witnesses against him." *Hopkinson v. Shillinger*, 866 F.2d 1185, 1200 (10th Cir. 1989).

intent to refuse to testify in response to questions posed either by the prosecutor or defense counsel. *See id*. at 643-644. The trial judge then declared Mr. Jones unavailable. *See id*. at 646. He did so without requiring Mr. Jones to take the stand stating: "I believe he is unavailable and to put him on the stand serves no purpose." *Id*. The trial judge further stated: "It's obvious from Mr. Jones' mannerisms this Court's perception of his hostility to me as I'm looking at him trying to discuss it with him that he is going to do what he's going to do. He really doesn't care what anybody thinks or what anybody is willing to do to him." *Id*. at 646-647. The trial judge reserved ruling on whether he was placing Mr. Jones in contempt and proceeded to declare him unavailable. *Id*. at 647.[5]

According to Petitioner, Mr. Jones should have been called to the witness stand so that his refusal to testify could be expressed in the presence of the jury. Petitioner contends Jones' refusal to testify "was due to his displeasure with the State for not fulfilling its end of the deal." *See* Petitioner's Reply [Doc. #13] at 2. Thus, Petitioner claims Jones' bias and motive for implicating Petitioner was never exposed to the jury.[6]

---

[5]The fact the trial judge did not specifically order Jones to testify does not defeat Jones' unavailability as a witness. *Compare Jennings v. Maynard*, 946 F.2d 1502, 1505 (10th Cir. 1991) (witness satisfied unavailability standard under both Oklahoma law and for purposes of the Confrontation Clause where he testified *in camera* that he would not obey order to testify). *See also United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir. 1982) (witness's persistent refusal to testify rendered witness unavailable for purposes of Fed. R. Evid. 804(a)(2); "[a]lthough the court could have more clearly ordered the witness to testify, the record shows the court's conversation with the witness in an out of jury hearing at the second trial was sufficient to meet the order requirement of [the Rule].").

[6]The jury was instructed that the testimony of an informer "who provides evidence against a defendant . . . for immunity from punishment or for personal advantage must be examined and

(continued...)

Petitioner's argument is premised on the erroneous assumption that had Jones taken the stand in Petitioner's third trial, he would have offered testimony explaining that his reason for refusing to testify was due to the State's failure to follow through with a deal in exchange for his testimony.  The *in camera* hearing, however, demonstrates Jones was not going to answer questions at all, and that his refusal to testify encompassed any testimony about his reasons for refusing to testify.  Moreover, the *in camera* hearing indicates that additional reasons may have explained his refusal to testify, including a concern for his four children.  *See* Tr. Vol. V at 641.

Even accepting the premise of Petitioner's argument, however, Petitioner's confrontation rights were not violated.  As the OCCA found, the trial judge properly determined Jones was unavailable, and Jones' testimony read to the jury was subjected to thorough cross-examination.  Defense counsel's vigorous cross-examination elicited testimony about Jones' attempt to get a favorable deal from the district attorney, his motivation to avoid prison on a federal firearms offense and his disappointment, even at the time of the second trial, about the State's refusal to "live up to their end of the bargain."  *See* OCCA Opinion at 5; *see also* State Court Record [Doc. #12], Court's Exhibit 1, Testimony of Luke Jones (May 13, 2004) at 17-53.  The OCCA's determination of this issue is not

---

[6](...continued)
weighed by you with greater care than the testimony of an ordinary witness. . . ."  *See* State Court Record [Doc. #12], Criminal Appeal Original Record, Volume VIII at 1521, Jury Instructions, Instruction No. 19.  The jury was also instructed, generally, on determining the credibility of witnesses.  *See id.* at 1541, Instruction No. 39.

contrary to or an unreasonable application of federal law as determined by the Supreme Court.

### B.      Ground Two – Jury Instruction Error

Petitioner next claims that the trial court's failure to give a jury instruction on the need for accomplice testimony to be independently corroborated violated his Fifth, Sixth and Fourteenth Amendment rights.  Petitioner requested such an instruction as to the State's witness Christopher Todd Jackson, but the trial court denied the request.  *See* Tr. Vol. VII at 1164-1165.[7]

Generally, under Oklahoma law, the "testimony of an accomplice must be corroborated with evidence, that standing alone, tends to link the defendant to the commission of the crime charged."  *Sadler v. State*, 846 P.2d 377, 383 (Okla. Crim. App. 1993).  However, "[a]ll that is required is for there to be at least one material fact of independent evidence that tends to connect the defendant with the commission of the crime," and "[c]ircumstantial evidence can be adequate to corroborate the accomplice's testimony." *Id*.

The OCCA held that an accomplice instruction should have been given to allow the jury to determine whether Jackson was an accomplice to the murders charged.  *See* OCCA Opinion at 6.  The OCCA found that "Jackson's presence at the crime scene, his actions in accompanying two men on a mission to confront others about a drug deal gone wrong, the

---

[7]Jackson received immunity from prosecution for the same crimes as those for which Petitioner was charged.  *See, e.g.,* Tr. Vol. IV at 457 and Vol. VI at 923-925.

presence of at least two weapons at the crime scene, and some testimony that Jackson told two witnesses that [Petitioner] did not shoot Mrs. Paisley and reportedly told one witness that he (Jackson) shot Mrs. Paisley" supported giving the instruction. *Id*. at 6.[8] Nonetheless, the OCCA concluded that the failure to instruct the jury amounted to harmless error based on sufficient corroboration and after assessing the strength of the evidence. *Id*. at 7-9 *citing Simpson v. State*, 876 P.2d 690, 702 (Okla. Crim. App. 1994).

Even if Petitioner were entitled to an accomplice instruction under Oklahoma law, this Court's habeas review is governed by federal constitutional principles and not by state law. *Foster v. Ward*, 182 F.3d 1177, 1193 (10th Cir. 1999).   A cautionary instruction on uncorroborated accomplice testimony is not constitutionally required. *Id*.  Rather a habeas petitioner must show "in the context of the entire trial, the failure to instruct the jury to carefully consider [the witness's] credibility as an accomplice 'had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.'" *Id*. (*quoting Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995).

Here, the OCCA specifically found Mr. Jackson's testimony was corroborated by the testimony of Luke Jones, by Petitioner's own admissions to the police, by the crime scene evidence and by the medical examiner. *See* OCCA Opinion at 8, footnote 7.  Petitioner has failed to refute these findings nor has he otherwise demonstrated that failure to give the

---

[8]The OCCA further stated the accomplice instruction was not required "as a matter of law" because "the evidence on that point is not entirely strong, is sharply disputed by other evidence, and would not likely have resulted in Jackson being bound over for trial had the State not dropped charges it initially filed (perhaps for strategic reasons) against Jackson." *See id.*, footnote 4.

11

cautionary instruction regarding accomplice testimony rendered his trial fundamentally unfair.  Moreover, as discussed in relation to Petitioner's third ground for relief, the evidence was sufficient to support Petitioner's convictions.  Ground Two of the Petition, therefore, should be denied.

### C.   <u>Ground Three – Sufficiency of the Evidence</u>

As his third ground for relief, Petitioner claims the evidence was not sufficient to support his conviction on Count II (First Degree Murder of Sharon Paisley) and Count III (Felonious Possession of a Firearm) and, therefore, that his Fifth and Fourteenth Amendment due process rights have been violated.  According to Petitioner, absent independent corroboration of the testimony of accomplice Jackson, the State's evidence was insufficient to support the convictions on Counts II and III as no other reliable evidence was presented to support these convictions.

On federal habeas review of the sufficiency of the evidence the proper inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir.2006) (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard respects the jury's province to weigh the evidence and draw reasonable inferences from the testimony presented at trial.  *Id*.  Because sufficiency of the evidence is a mixed question of law and fact, the deference required by both § 2254(d)(1) and (d)(2) is applied.  *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir.

2006).  A federal habeas court must "defer to any determination of factual issues by the state court due to the presumption of correctness afforded by § 2254(e)."  *Id.*

Mr. Jackson testified that he, Petitioner, and Christopher Todd Williams (Williams) went to the Paisleys' house and there was some discussion about drugs that had been sold to Petitioner.  Mr. Paisley said he did not want any problems and would refund the money. Jackson testified Mr. Paisley then went to borrow money from his neighbor to refund to Petitioner.  Mr. Paisley returned with the money fifteen to twenty minutes later.  The three men stood up to leave but Williams said he had to use the bathroom and went to the back of the house.  When Williams came out, he shot Mr. Paisley in the chest with a Tech 9 pistol and then shot him again in the head.  Mrs. Paisley got down between the couch and the coffee table where Petitioner shot her in the head with a .22 caliber pistol.  Mr. Paisley was on the floor, after having been shot twice, and Williams then shot him a third time.  Petitioner tried to shoot Mrs. Paisley a second time but his gun jammed.  Once Petitioner cleared the jam, he shot her a second time in the head as she lay between the couch and the coffee table. Tr. Vol. IV at 453, 475-482.

Jackson's testimony was corroborated in material respects by the testimony of Luke Jones.  Jones testified that Petitioner told him he shot "a white female" in the head twice with a .22 caliber weapon and that Williams shot "a white man."  Jones further testified Petitioner told him that a man named "Chris" (Jackson) was present with them but he did not say Chris shot anyone.  Jones testified Petitioner identified the man and woman as drug dealers from the Carolinas.  *See* State Court Record [Doc. #12], Court's Exhibit 1 at 12-15, 59.

The testimony of Jackson was also consistent with Petitioner's statement to the police except that Petitioner did not admit to shooting Mrs. Paisley, instead attributing that crime to "Todd" (Williams). Tr. Vol. VI at 1022-1025.[9] In addition, the victim's neighbor, Larry Dhooge, provided additional testimony that supported the events as relayed by Jackson. Dhooge testified that Mr. Paisley borrowed $200 from him on the evening of the murders so that he would not have to go into town to the bank. Tr. Vol. V at 678. This corroborated Jackson's testimony that Mr. Paisley left the house to get money to refund to Petitioner.

The forensic evidence also supported Jackson's testimony that Petitioner shot Mrs. Paisley twice in the head with a .22 caliber pistol and his testimony concerning the location of Mrs. Paisley at the time she was allegedly shot. Tr. Vol. V at 696-698, 799-802, 831-837. *See also* State Court Record [Doc. #12], State's Exhibits 4 and 7.

---

[9]The OCCA made the following findings with respect to Petitioner's claim that Williams (or Jackson) shot Mrs. Paisley:

> Comparatively speaking, the evidence that Williams or Jackson shot Mrs. Paisley is not nearly as strong as the evidence that [Petitioner] was the shooter. While there are credibility issues relating to Jackson and Jones, the same can be said of many witnesses in this trial, including the few witnesses who, in rather cryptic fashion, pointed the finger at Jackson or Williams. Remember, [Petitioner], when interviewed, never claimed that Jackson was the shooter or participated in the crime to any significant degree, and the only witness, Lee, who claimed Jackson was involved was not at the crime scene. Even were we to discard much of the impeached evidence, [Petitioner] is sufficiently connected to the crime through evidence showing he was at the scene of the crime, he had instigated the drug purchases that day, it was his idea to go back, two guns were brought to the Paisley's home, a demand for money was made, Williams used one of the guns, and two separate guns were used in the killings.

*See* OCCA Opinion at 8, footnote 8.

14

Petitioner has failed to meet his burden of proving that no rational trier of fact could have found Petitioner guilty beyond a reasonable doubt.[10]   The OCCA's determination regarding the strength of the evidence against Petitioner is not contrary to or an unreasonable application of Supreme Court precedent, nor is it an unreasonable determination of the facts in light of the evidence presented.   Ground Three of the Petition should be denied.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by November __19th__, 2007.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[10]As the Tenth Circuit has noted in an unpublished opinion, on federal habeas review, the court "is not required, as was the OCCA, to inquire into whether there was sufficient evidence to support the verdict absent [the accomplice] testimony" as "[f]ederal law governing insufficiency claims requires a reviewing court to determine only whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Watson v. Howard*, No. 04-6074, 123 Fed. Appx. 910, 918 (10th Cir. Feb. 17, 2005) (unpublished op.) (internal quotations and citation omitted).

15

## STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred by the District

Judge in this case and terminates the referral.

DATED this ___30th___ day of October, 2007.


VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE